**The PEOPLE of the State of Colorado, Plaintiff-Appellant,**

v.

**Joseph W. MENDRO, Defendant-Appellee.**

**No. 85SA177.**

Supreme Court of Colorado, En Banc.

Jan. 20, 1987.

Barney Iuppa, Dist. Atty., Lovice D. Riffe, Deputy Dist. Atty., Colorado Springs, for plaintiff-appellant.

J. Gregory Walta Colorado Springs, for defendant-appellee.

VOLLACK, Justice.

The People appeal the trial court's acquittal of the defendant on felony theft, pursuant to section 18–4–401, 8B C.R.S.

(1986). The trial court, sitting as the trier of fact, found the People sustained their burden of proof beyond a reasonable doubt to all the elements of theft. However, the court ruled that a prosecution under the theft statute for violation of the mechanic's lien statute, section 38–22–127, 16A C.R.S. (1982), required proof of an additional element of mens rea. The trial court ruled that the prosecution must prove that the defendant knew the requirements of the mechanic's lien statute and that his acts constituted the wrongful use of his customers' money. We disapprove the judgment.

I.

The defendant was the owner of a remodeling business located in Colorado Springs, now defunct. Evidence at trial showed that the defendant took money from various clients as an advance payment for work to be performed, but used a considerable portion of the money advanced to pay his ongoing operating expenses and bank loans. The defendant was charged with felony theft as a result of violating section 38–22–127 of the general mechanic's lien statute, 16A C.R.S. (1982). Section 38–22–127 states in pertinent part:

(1) All funds disbursed to any contractor or subcontractor under any building, construction, or remodeling contract or on any construction project shall be held in trust for the payment of the subcontractors, material suppliers, or laborers who have furnished materials, services, or labor, who have a lien, or may have a lien, against the property, or who claim, or may claim, against a principal and surety under the provisions of this article and for which such disbursement was made.

(2) This section shall not be construed so as to require any such contractor or subcontractor to hold in trust any funds which have been disbursed to him for any subcontractor, material supplier, or laborer who claims a lien against the property or claims against a principal and surety who has furnished a bond under the provisions of this article if

such contractor or subcontractor has a good faith belief that such lien or claim is not valid or if such contractor or subcontractor, in good faith, claims a setoff, to the extent of such setoff.

. . . .

(5) Any person who violates the provisions of subsections (1) and (2) of this section commits theft, as defined in section 18–4–401, C.R.S. 1973.

The trial court, sitting as the finder of fact, concluded that the prosecution had proved each of the elements of theft as set out in the theft statute, section 18–4–401, and that the defendant had failed to comply with the requirements of the mechanic's lien statute. However, the court ruled that the prosecution was required to prove "something more" than the elements of theft and the defendant's failure to comply with the requirements of the mechanic's lien statute. The trial court found that the defendant did not use his customers' money for his own personal use, but used it to pay his ongoing operating expenses and bank loans at the recommendation of his bank's lawyer, his accountant, and his friend and financial confidant. The court also found that the defendant was not aware of the mechanic's lien statutory requirement that a certain amount of each customer's money must be held in trust to pay materialmen and laborers.

The trial court ruled that in order to criminally prosecute the defendant for violation of the mechanic's lien statute, a civil statute, the prosecution must prove that the defendant knew that his acts constituted wrongful use of customers' money. The court relied on *People v. Piskula*, 197 Colo. 148, 595 P.2d 219 (1979), and *People v. Washburn*, 197 Colo. 419, 593 P.2d 962

(1979), to conclude that the prosecution had failed to establish beyond a reasonable doubt the existence of a culpable mental state on the part of the defendant. The prosecution contends that it is sufficient that the defendant "knowingly" used the money in a manner inconsistent with the owners' use or benefit, under section 18–4–401(1)(b), and that the trial court found that element to have been met. The prosecution also contends that the trial court erred in requiring the defendant to know and ignore the requirements of section 38–22–127 in order to prove that there was guilty knowledge.

## II.

A prosecution for a violation of section 38–22–127 must be prosecuted under section 18–4–401. *People v. Piskula*, 197 Colo. 148, 595 P.2d 219 (1979). *See* § 38–22–127(5), 16A C.R.S. (1982). In order to convict, the prosecution must prove each of the elements of the crime of theft as set out in section 18–4–401, including the requisite intent. *People v. Brand*, 43 Colo.App. 347, 608 P.2d 817 (1979). All of the subsections of 18–4–401, except (d), contain an express culpable mental state element.[1] The trial court interpreted *People v. Piskula* to require that the prosecution prove an additional element of mens rea in a prosecution for the violation of section 38–22–127. In *People v. Piskula*, we stated, "When the means used to perpetrate this theft are those of deception, the requisite mental state is necessarily the intent to defraud." 197 Colo. at 151, 595 P.2d at 221. The trial court interpreted this language to require the prosecution to prove that the defendant had the specific intent to defraud his customers when he violated

---

**1.** Section 18–4–401, 8B C.R.S. (1986), states in pertinent part:

**Theft.** (1) A person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization, or by threat or deception, and:

(a) Intends to deprive the other person permanently of the use or benefit of the thing of value; or

(b) Knowingly uses, conceals, or abandons the thing of value in such manner as to de-

prive the other person permanently of its use or benefit; or

(c) Uses, conceals, or abandons the thing of value intending that such use, concealment, or abandonment will deprive the other person permanently of its use and benefit; or

(d) Demands any consideration to which he is not legally entitled as a condition of restoring the thing of value to the other person.

section 38–22–127. In this interpretation, the trial court erred.

In *People v. Piskula*, we held that a prosecution for the violation of section 38–22–127 did not conflict with the constitutional prohibition of imprisonment for civil debt. We also stated that "the critical factor in determining whether or not a criminal prosecution falls within the fraud exception to this constitutional prohibition is the existence of the intent to defraud as an element of the offense." *Id.* at 150, 595 P.2d at 221. We have since rejected this suggestion that all theft by deception prosecutions require proof of intent to defraud, and have held instead that "the General Assembly has established alternative mental state requirements for the offense of theft by deception." *People v. Quick,* 713 P.2d 1282, 1289 (Colo.1986). Section 38–22–127(5) mandates that a person who violates its provisions commits theft under section 18–4–401. Section 18–4–401 requires proof of a culpable mental state as well as proof of prohibited conduct for conviction of any of the offenses enumerated therein. *People v. Quick,* 713 P.2d at 1287; *see also Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). Here, the trial court found that the prosecution had proved beyond a reasonable doubt all the elements of theft pursuant to section 18–4–401. For the reasons set forth in Part III, the trial court improperly entered the judgment of acquittal.

### III.

■ The People also claim that the trial court erred in ruling that the defendant must be shown to have had knowledge of the requirements of section 38–22–127 and have failed to comply with those requirements in order to be convicted of theft. The trial court stated in its findings of fact and conclusions of law that:

[I]f it could be shown that Mr. Mendro knew of the requirements of the mechanic's lien statute that that money was supposed to be held in trust, ... and had he then chosen to ignore that law, ... then in my judgment he could have been

found guilty of theft and should have been found guilty of theft. But without that guilty knowledge, in my judgment, he cannot be.

We have long recognized that a mistake of law is no defense to the criminal culpability of a person's actions. *Michael Motors, Inc. v. Colorado Dealer Licensing Bd.,* 200 Colo. 455, 616 P.2d 110 (1980); *Kirkendoll v. People,* 138 Colo. 267, 331 P.2d 809 (1958). In addition, section 18–1–504(2) states in pertinent part:

A person is not relieved of criminal liability for conduct because he engages in that conduct under a mistaken belief that it does not, as a matter of law, constitute an offense. . . .

The defendant's violation of section 38–22–127 is not immune from prosecution because of his ignorance of that statute's existence. However, evidence that the defendant violated 38–22–127 by itself does not lead to criminal liability. The People must prove all elements of the theft statute, section 18–4–401, to obtain conviction.

To the extent that the trial court required the People to prove a culpable mental state element beyond that required in the theft statute, and held that the defendant must know the requirements of the mechanic's lien statute to prove culpable mental state, we disapprove of the judgment.

LOHR, J., dissents, and QUINN, C.J., joins in the dissent.

DUBOFSKY, J., does not participate.

LOHR, Justice, dissenting:

Section 38–22–127, 16A C.R.S. (1982), requires that a contractor on any construction project hold in trust for the payment of subcontractors, suppliers and laborers funds disbursed to the contractor in payment for work performed on the project. The statute further provides that any person who violates the requirement that such funds be held in trust commits theft under section 18–4–401, 8B C.R.S. (1986). The majority holds that a contractor can be convicted of theft under this statutory

scheme notwithstanding a complete absence of knowledge of the requirement that payment for construction work be held in trust. I would not impute to the legislature the intent to impose criminal liability in absence of any wrongful intent by a contractor, and therefore I respectfully dissent.

The majority holds that a contractor can be found guilty of theft for using funds disbursed to him under a construction contract while being completely unaware of his statutorily-imposed responsibility to hold the funds in trust. In doing so, the majority has allowed the imposition of criminal liability on one who lacks a culpable mental state. "Generally, in order to subject a person to criminal liability for a felony or serious misdemeanor, there must be a concurrence of an unlawful act (*actus reus*) and a culpable mental state (*mens rea*)." *Hendershott v. People*, 653 P.2d 385, 390 (Colo.1982). *See United States v. Bailey*, 444 U.S. 394, 402, 100 S.Ct. 624, 630, 62 L.Ed.2d 575 (1980); *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952); *People v. Marcy*, 628 P.2d 69 (Colo.1981).

The theft statute, it is true, requires a culpable mental state. A person is guilty of theft only if he "knowingly obtains or exercises control over anything of value of another without authorization" and "intends to deprive the other person permanently of the use or benefit of the thing of value." § 18-4-401(1), 8B C.R.S. (1986). The majority holds that the requisite culpable mental state can be predicated on the legal fiction that the contractor in this case was aware of the requirements of section 38-22-127, or that it is irrelevant whether he knew of those requirements because ignorance of the law is not a defense. I cannot believe, however, that the legislature intended to impose criminal liability of degrees of seriousness ranging up to a class 3 felony on the basis of legally imputed but factually nonexistent knowledge that funds received in payment for construction work were deemed in law to be held in trust. *See Hendershott v. People*, 653 P.2d 385, 390 (Colo.1982) (legislature

rarely will attempt to impose criminal sanctions on the blameless); § 2-4-201(1)(c), 1B C.R.S. (1980) (in enacting a statute, it is presumed that a just and reasonable result is intended).

It is unnecessary to determine whether the legislature could impose such liability. Rather, in absence of a clearcut expression of an intention to do so—an intention I cannot discern from the statutes at issue—I would not construe the statutes to impose criminal liability in circumstances where, as here, the contractor had no actual knowledge of his obligation to hold the funds in trust.

I would affirm the judgment of the trial court.

QUINN, C.J., joins in this dissent.